PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* PAUL L. MCCONNIE, d/b/a COLONIA HACIENDA GRANDE and COLONIA VIRGINIA, Respondent.

No. JRT-66-4.      Decided May 11, 1967.

*J. B. Fernández Badillo, Solicitor General, Luis M. Rivera Pérez, Celia Canales de González,* and *Marta Ramírez de Vera* for petitioner. *Julián O. McConnie, Jr.,* for respondent.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The Puerto Rico Labor Relations Board (hereinafter designated as the Board) appeals to us praying that we enforce its Decision and Order of March 18, 1965 addressed to respondent, Paul L. McConnie, d.b.a. Colonia Hacienda Grande and Colonia Virginia (hereinafter designated McConnie) to comply with the recommendations of the trial examiner of the Board, that is, to pay to all the labor employees on its farms Colonia Virginia and Hacienda Grande the money it owes them by reason of the increase in the price of the sugar and pursuant to the provisions contained in the collective bargaining agreement and to notify the Chairman of the Board the measures taken to comply with such orders. Since McConnie ceased as employer the giving of notice was not recommended as in other cases.

On September 29, 1966 we issued an order requesting McConnie to show cause why a decree enforcing said Decision and Order of the Board should not be issued.

According to the findings of fact of the trial examiner, not controverted by respondent, McConnie was engaged in the planting, growing, cutting, and harvesting of the sugarcane in Colonias Hacienda Grande and Virginia. It had signed a collective bargaining agreement with the Union "Obreros Unidos de Loíza" in relation to the agricultural workers of said farms, which provided for an increase of six and a half cents per day in their wages for every 10 cents or fraction thereof of increase in the price of sugar over the basic price of $4.50 C.I.F. Newfoundland. It also provided for a Grievance Committee consisting of two representatives designated by the Union and two by the employer, with jurisdiction to entertain all controversies which would arise between the employer and the Union, including those based on the inter-

pretation of the contract; in the event it could not reach a decision within a period of 48 hours, the agreement provided that the controversy would be submitted to a fifth member who, in case he could not be designated by the four original members of the committee, would be designated by a high official of the State government, at the request of the committee, from among the judges of the Superior Court of Puerto Rico.

When the price of sugar went up, McConnie did not pay to its employees, notwithstanding the request of the Union, the corresponding increase in wages, alleging that it was paying the same wage as the other farmers of the zone. At the end of the grinding season McConnie withdrew from the business. The committee in question agreed to continue with the transactions provided in the agreement. Since the controversy could not be decided by the four permanent members of the Grievance Committee, the necessary steps were taken for the designation of the fifth member, but said designation was never made in spite of all the steps taken by the Union to that effect.

In view of the foregoing, the legal division of the Board filed a complaint before the latter charging McConnie with unfair labor practices in violating the wage increase clause of the collective bargaining agreement.

The trial examiner decided that:

"The rule consistently followed by the Board of requesting the parties to exhaust all the remedies provided in the collective bargaining agreement to settle their differences before appealing to the Board is to be applied to situations which are not special. However, to refuse access to the proceedings of the Board to a labor organization by reason of their impossibility to designate the fifth member of the Grievance Committee would not help to promote the public policy contained in the law. Consequently, the Board must entertain this controversy although, technically, the proceedings established in the Grievance Committee were not utilized until its culmination."

## Respondent's Assignments

In its answer McConnie alleges that said Decision and Order is abusive and discriminating, illegal, erroneous, and void; that it is not equitable, just, and impartial; that it is unconstitutional.

Respondent is not right and, on the contrary, it is proper for us to enforce the Decision and Order in issue.

In synthesis, respondent actually adduces two reasons in support of its assignments. One is, that the action of the Board in requiring McConnie to comply with the wage-increase clause of the agreement is improper, because not only did it fail to act in like manner against the other *colonos*, but also it refused to do so notwithstanding respondent's timely request in writing. The other is that the trial examiner fails to cite any case law or other legal arguments in support of his conclusion that the Board should entertain the controversy since it was not possible to obtain the designation of the fifth member.

■■ Pursuant to subdivision (a) of § 7 of the Puerto Rico Labor Relations Act (29 L.P.R.A. § 68(a)) the Board has power, as provided by this law, to prevent any person from engaging in any unfair labor practice, one of the latter being the violation of a collective bargaining agreement. Section 8(1)(f) of said Act—29 L.P.R.A. § 69(1)(f). But the Board entertains such actions "Whenever it is charged that any person, employer or labor organization has engaged in or is engaging in any unfair labor practice." Section 9(1)(a) of the law in question—29 L.P.R.A. § 70(1)(a). The Board has not been empowered to issue complaint upon its own initiative. It may only do so when a charge has been presented that a person has engaged in or is engaged in an unfair labor practice. Consequently, the filing of a charge is of jurisdictional nature. *National Labor Relations Board* v. *Swift and Company*, 233 F.2d 226, 231 (8th Cir.

1956); *Consumers Power Co.* v. *National Labor Relations Bd.*, 113 F.2d 38, 42 (6th Cir. 1940).

█ In view of the foregoing, the Board, in this case, could not issue, *motu proprio*, any proceeding against the *colonos* who in violation of the collective bargaining agreement in question failed to or refused to pay the proper wage increase resulting from the increase of the price of sugar. It could only take action when one or more charges were filed to that effect. Under such circumstances, and in view of such limitations, there is no ground to sustain, as respondent alleges, that the Board acted abusively, discriminatingly, illegally, and erroneously and that its action in this case is not equitable, just, or impartial, and, on the contrary, it is void or unconstitutional.

█ It is not proper either to question the conclusion of the trial examiner to the effect that it was proper for the Board to act, although technically, the proceedings in the Grievance Committee were not utilized until their culmination.

In *Pérez* v. *Water Resources Authority*, 87 P.R.R. 110, 117 (1963), we said that the Board correctly stated that: ". . . this Board, in accomplishing the legislative purpose, generally does not entertain cases of violation of agreement whenever the parties have not exhausted the remedies provided by the agreement itself for the solution of such problems." In *Vaca* v. *Sipes*, decided by the Supreme Court of the United States on February 27, 1967, the court said: "it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. *Republic Steel Corp.* v. *Maddox*, 379 U.S. 650 (1965). However, because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable . . . . The problem then is to determine under what circumstances the individual employee

may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures."

In the case at bar the Union took all the reasonable steps which could fairly be expected for the purpose of giving effect and culminating the grievances procedure, but it could not attain the designation of the fifth member of the Grievance Committee according to the procedure established by the collective bargaining agreement due to circumstances beyond its control, that is, the inability to act or the failure to act on the part of the officer designated directly in the agreement as well as on the part of another who was indicated by the former as the proper one to make the designation in question. Therefore, we cannot say that the conclusion of the trial examiner, approved by the Board was erroneous or improper in the sense that "to refuse access to a labor organization to the proceedings of the Board by reason of the impossibility to designate the fifth member of the grievance committee would not help to promote the public policy contained in the law." *Abréu Román* v. *Rivera Santos*, 92 P.R.R. 314 (1965); *Wymard* v. *McCloskey & Co.*, 190 F.Supp. 420 (1960), affirmed in 292 F.2d 839 (3d Cir. 1961).

For the reasons stated, we shall grant the petition of the Board to enforce its Decision and Order of March 18, 1965, and in virtue thereof respondent is ordered to take the affirmative action required by the order of the Board.